In re HUDSON.

(District Court, S. D. Alabama. January 30, 1920.)

No. 2023.

BANKRUPTCY ⬦═407(5)—BORROWING MONEY BY MORTGAGING PROPERTY NOT
OWNED NOT OBTAINING MONEY ON FALSE WRITTEN STATEMENT, BARRING
DISCHARGE.

The giving by a bankrupt of a mortgage on property which he did not
own, to secure a note for money borrowed, *held* not an obtaining of the
money upon a materially false statement in writing, which bars discharge,
under Bankruptcy Act, § 14b(3), Comp. St. § 9598; the debt being one
which, under section 17a(2), Comp. St. § 9601, is not released by a dis-
charge.

In Bankruptcy. In the matter of Richard B. Hudson, bankrupt.
On motion to strike objection to discharge. Motion granted.

Lyons, Chamberlain & Courtney, of Mobile, Ala., for movant.
Wm. B. Inge and Roy R. Cox, both of Mobile, for respondent.

ERVIN, District Judge. This is a motion to strike the contest of
the bankrupt's application for discharge on the ground that the ob-
jection to the discharge is not one of those enumerated in the Bank-
ruptcy Act of July 1, 1898 (30 Stat. 544, c. 541). The objection is
based upon subdivision b (3) of section 14 (Comp. St. § 9598), which
reads as follows:

"The judge shall * * * discharge the applicant unless he has * * *
obtained money or property on credit upon a materially false statement in
writing, made by him to any person or his representative for the purpose of
obtaining credit from such person."

The facts set up to support this contest are that the bankrupt, in
order to secure a loan of money from the contesting creditor, evidenced
by bankrupt's notes given at the time, gave such creditor a written
mortgage upon a described automobile, and that the bankrupt owned
no such automobile. An analysis of these facts will show that techni-
cally they do literally come within the provisions of subsection 3.
The money was obtained and notes were given evidencing the loan, so
that there was a credit then granted by the lender to the borrower,
and the written statement contained a materially false statement, in
that the borrower did not then own the automobile as stated in the
writing, and the loan was made on the faith of such representation.

The question, however, is whether this was such an obtaining of
money on credit as was contemplated by Congress when this provision
was written. Counsel have been unable to find any case in which
the state of facts set up herein has been discussed in this connection,
nor have I, in the brief examination I have made, been able to find
any such case; so I must consider the words as contained in the two
sections herein referred to, and give to each the meaning which the
import of the language suggests to me that Congress intended they
should have.

⬦═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The Bankruptcy Act was primarily written to cover ordinary mercantile dealings; so the words used in the act are to be given the construction and meaning ordinarily understood in mercantile dealings, and not the strict technical construction which they may be susceptible of. A loan upon given security is not ordinarily contemplated when merchants speak of obtaining money, goods, or property on credit. The fact that Congress used these words to denote the ordinary credit dealings between merchant and customer is indicated by the construction placed upon this subdivision by all the text-writers, such as Collier, Brandenburg, and Remington.

In discussing this provision, they all treat it as a provision intended by Congress to deny a discharge where the money or goods were secured on some representation by the borrower, such as the statements ordinarily given to the mercantile agencies—a statement of facts made as a basis of credit between a customer and a merchant. None of these writers, so far as I have been able to ascertain, have considered that the provision written in subdivision 3 goes further than this and covers a special loan secured by collateral pledged or mortgage given at the time, which loan may have been obtained upon a false representation of fact.

The fact that these writers have all so construed this provision, and have not conceived that it went far enough to include money or property obtained by false pretenses or false representations, is persuasive evidence that the language used by Congress was not intended to include such a state of facts, and is supported by the further fact that Congress wrote into the Bankruptcy Act, in section 17, the following:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * (2) are liabilities for obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another, or for alimony due or to become due, or for maintenance or support of wife or child, or for seduction of an unmarried female, or for breach of promise of marriage accompanied by seduction, or for criminal conversation."

It will be observed that the statement of facts in this case brings the parties directly under the first paragraph of subsection 2 of section 17, in that it was a liability or debt created by obtaining money by false pretenses or false representations, and hence the debt or liability so created would not be released by the discharge, even if granted. Congress would scarcely have provided that a debt or liability created by a given state of facts should be a ground for objecting to a discharge, and at the same time have excepted the debt so created from the discharge when granted. It is manifest that these two provisions, if so construed, would be inconsistent, because, if an obligation so created was excepted from the discharge when granted, it could hardly be a ground for objecting to the granting of the discharge, which would not cancel or release such debt or liability.

Again, it is hardly conceivable that Congress would have grouped a number of classes of obligations or debts and excepted them from release by the discharge, and yet have provided that a debt or obligation

so created in the manner specified by one of these classes only should be a bar to the release, and not have given the same effect to the debt created by the other enumerated classes. For instance, to construe it as contended by the objecting creditor, we would have a debt or obligation created by buying property under false pretenses or false representations, which would be a bar to any discharge; but, if the debt or obligation was created through willful or malicious injuries to the person or property of another, it would be merely excepted from the operation of the discharge when granted, but would be no ground for objection to the granting of any discharge whatever. I cannot conceive that Congress intended to draw such distinctions between the two classes of debts enumerated.

I am satisfied that what Congress intended to do was to except from the effect of the discharge one class of debts or obligations created by obtaining property under false pretenses or false representations, as these words are used in the various statutes of the various states, making this state of facts a crime, and that the words used in subsection 3 of section 14 were intended to be limited to such dealings between merchants or individuals, where a written statement of facts was made by the borrower as a basis of credit, as ordinarily understood in mercantile dealings, and that the language they have used, where given its ordinary meaning, does just what Congress intended.

I therefore hold that, where the facts set up bring the parties under the provisions of subdivision 2 of section 17, the debt or obligation is not released by the discharge, and hence such facts present no ground for objecting to the granting of a discharge.

A decree will therefore be entered, granting the motion to strike the objections.