taking of the new cargo for the port of Cuba, was such a deviation from the voyage as abrogated the shipping articles and relieved the seamen from further service. The respondent contends that under the articles the ship had the right to call at the port of Tacoma or Seattle, to discharge or take cargo as it saw fit, inasmuch as the shipping articles provided that the ship may go to any port in the world, and the port of final discharge was definitely stated in the articles as north of Cape Hatteras, which all of the evidence shows means on the Atlantic Coast, and that, while the respondents agreed to the discharge of the libelants who so desired, it is not willing to pay transportation to New York.

[2] It is shown that the libelants were requested to sign "new articles" and refused. The shipping commissioner, on request of the agent of the respondent for a decision found that the seamen were entitled to transportation to New York. This fact, though, is not material here, except to show what the relation of the seamen to the voyage was considered to be by all parties. The vessel considered the voyage ended, or it would not have required the signing of the shipping articles as testified to by libelants, and not denied. The master, who, it is said, made this request, was not called, nor was his absence explained. The men were discharged through no act of commission or omission which would warrant such discharge. This was not the port of final discharge, and the men were not requested to continue on the voyage under the articles, but were requested to sign new articles for a new voyage. The vessel by its own conduct fixed the status of the men with relation to this proceeding, and they are entitled to their wages and board during detention, and transportation to New York, to such as desire to go to New York.

In re DAY.

(District Court, N. D. Georgia. November 27, 1920.)

No. 6606.

1. Bankruptcy ⊸407(5)—Obtaining of credit on false statements ground for denying discharge, though debt would not be released.

Bankruptcy Act, § 14b (Comp. St. § 9598), specifying the obtaining of credit on a false statement in writing made for that purpose as ground for denial of a discharge, and section 17 (section 9601), providing that liabilities for obtaining property by false pretenses are not released by a discharge, are not mutually exclusive, or even in pari materia, and such obtaining of credit is ground for denying discharge, though the debt so contracted would not be released by the discharge.

2. Bankruptcy ⊸407(5)—Obtaining credit on false statements is ground for denial of discharge to any bankrupt.

Bankruptcy Act, § 14b (Comp. St. § 9598), providing for denial of a discharge to one obtaining credit on a false statement in writing made for that purpose, is not limited to merchants, but applies to all who ask a discharge in bankruptcy.

⊸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Bankruptcy ⬤══407(5)—Obtaining credit by any material false statement of fact in writing is ground for denial of discharge.**

Bankruptcy Act, § 14b (Comp. St. § 9598), relative to the obtaining of credit on false statements in writing, is not confined to statements of general financial condition, but covers any material statement of fact made in writing to the creditor to induce the credit.

In Bankruptcy. In the matter of Albert Lee Day, bankrupt. On application for a discharge. Discharge denied.

E. M. Habersham and W. I. Heyward, both of Atlanta, Ga., for objecting creditors.

Westmoreland & Smith, of Atlanta, Ga., for bankrupt.

SIBLEY, District Judge. [1] The application for a discharge is met by a creditor's objection, supported by proof that part of his debt represents a credit extended on the faith of a written statement of financial condition made by the bankrupt to the creditor, wherein the bankrupt states his liabilities to be about $5,000, whereas his schedule in bankruptcy shows that they were at the time over $60,000. The contention of the bankrupt is that, while this matter may make a case of a "liability for obtaining property by false pretenses or false representations," which will be unaffected by a discharge under Bankruptcy Act, § 17, as amended (Comp. St. § 9601), it cannot also be urged as a ground for denying a discharge under section 14b, and that the creditor's remedy is under the former and not the latter section, which are mutually exclusive.

[2, 3] Although section 17 can have no application to a bankrupt who has been refused a discharge under section 14b, I do not think the two sections are mutually exclusive, or even in pari materia. Section 17 is for the benefit of the creditor whose claim is covered thereby, and to be invoked by him only. It comes into operation only after the bankruptcy court has done its work, and can hardly ever be applied by such court, unless in a second bankruptcy. Section 14b is addressed to the bankruptcy court only, and is not for the benefit of any particular creditor or class of creditors, and by its express terms may be invoked on any application for discharge by the trustee or other party in interest to entirely defeat the discharge. The purpose of the section is to preserve the discharge feature of the Bankruptcy Act from abuse, and deny its benefits to one who has shown himself unworthy of them in any of the ways specified in the section. The section is at bottom one of penalty or forfeiture, and one of the things penalized is the commercial dishonesty manifested by obtaining a credit on a materially false statement in writing, made to induce the credit. This section, having its own purpose, must be construed according to its own terms, and independently of section 17. There is nothing in the words of the provision in question, nor in the history of its adoption and its amendment, to confine it in its application to merchants, as here contended. It applies to all who ask a discharge in bankruptcy. Nor is it to be confined to statements of general financial condition, but covers any material statement of fact made in writing to the creditor to induce the credit. It covers the case at bar.

---

⬤══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This conclusion accords with that reached by this court in Re Reed, 256 Fed. 412. It accords, also, with the statement of the law made by the Circuit Court of Appeals of the First Circuit in Robinson v. Williston, 266 Fed. 970, in holding that the giving of a bad check did not bar a discharge only because there was no express written statement, but only an inferential one. The case of In re Hudson (D. C.) 262 Fed. 778, involving the giving of a mortgage on property not owned by the mortgagor, was correctly decided according to the Robinson Case.

The discharge is denied.

## UNITED STATES v. FORTMAN.

(District Court, W. D. Oklahoma. June 24, 1920.)

### No. 2204

Internal revenue ⊂⇒2—Volstead Act supersedes revenue laws.

The Volstead Act, prohibiting the manufacture, and sale of intoxicants, supersedes prior revenue laws taxing such traffic, so that a person cannot be convicted for violating such revenue laws after the effective date of the Volstead Act.

Leonard H. Fortman was indicted for violating the revenue laws relating to intoxicating liquors, and moves to quash the indictment. Motion sustained.

Preslie B. Cole, Asst. U. S. Atty. (Herbert M. Peck, U. S. Atty., on the brief), for the United States.

J. B. Dudley, of Oklahoma City, for defendant.

POLLOCK, District Judge. Defendant in this case was indicted on four counts for violation of sections of the general revenue law. These violations are charged to have been committed April 7, 1920, after the Eighteenth Amendment to our national Constitution had become operative, and after the provisions of the Volstead Act (41 Stat. 305) putting national prohibition into effect had come into full force and operation. By the motion to quash it is sought to raise the question whether the general revenue laws of the government had, by reason of the terms and provisions of the Volstead Act, become inoperative at the date the offenses are charged to have been committed by defendant.

I am informed this question is now pending before the Supreme Court and will there soon receive authoritative decision. Meanwhile defendant herein is entitled to an assertion of his rights as a citizen. In all reason the government should not be permitted to occupy the dual and inconsistent positions of absolute prohibition in the enforcement of the Volstead Act against the manufacture and sale of intoxicating liquors, on the one hand, and at the same time recognizing that which is prohibited and made criminal by the Volstead Act to be a lawful source of revenue under the old revenue statutes. These positions are too inconsistent to be approved; and this, aside from the repealing clause of the Volstead Act, which reads as follows:

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes